UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Patricia B.,[1]     Plaintiff, <br><br> v. <br><br> Nancy A. Berryhill, Acting Commissioner of Social Security,     Defendant. | No. 17 CV 50201 <br> Magistrate Judge Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia B. brings this action under 42 U.S.C. § 405(g), seeking reversal and remand of the Commissioner of Social Security's denial of her claim for social security disability benefits. Plaintiff's brief makes a nice closing argument but essentially asks this Court to reweigh the evidence. Because this Court cannot reweigh the evidence on appeal, the Commissioner's decision is affirmed.

## I. BACKGROUND

On June 25, 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging that she became disabled on March 1, 2012 due to three herniated disks, spondylolisthesis, and posterior tibial tendon disfunction. R. 69, 78, 183. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing. R. 78-79, 90-93, 98-103. An administrative law judge ("ALJ") conducted a hearing on November 10, 2016, where Plaintiff, represented by counsel, and a vocational expert ("VE") testified. R. 40-68.

In an April 4, 2017 written decision, the ALJ denied Plaintiff's request for disability benefits. R. 11-39. In doing so, the ALJ applied the five-step sequential evaluation process required by 20 C.F.R. § 404.1520. R. 15-16. At step one, the ALJ determined that Plaintiff had

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

not engaged in substantial gainful activity from her alleged disability onset date, March 1, 2012, through her date last insured ("DLI"), December 31, 2016. R. 16. At step two, the ALJ found that Plaintiff had the following severe impairments through the DLI: degenerative disc and joint disease of the lumbar spine and degenerative joint disease of the right knee. *Id.* At step three, the ALJ determined that, through the DLI, Plaintiff did not have any impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20. The ALJ then concluded that Plaintiff had a residual functional capacity ("RFC") through the DLI to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following: she could frequently balance; she could occasionally climb stairs and ramps, stoop, crouch, and crawl; and could not kneel, operate foot controls bilaterally, or climb ladders, ropes, or scaffolds. *Id.* At step four, based on Plaintiff's RFC and the VE's testimony, the ALJ concluded that Plaintiff could have performed her past work as a warehouse supervisor, as that job is classified in the Dictionary of Occupational Titles, through the DLI. R. 34. Thus, the ALJ found that Plaintiff was not disabled from March 1, 2012 through December 31, 2016. *Id.* After the Appeals Council denied review of the ALJ's decision, it became the final decision of the Commissioner and, thus, reviewable by this Court. R. 1-6; *see* 42 U.S.C. § 405(g); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Clifford v. Apfel*, 227 F.3d 863, 869 (7th

2

Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the Court cannot overturn the Commissioner's decision "by reconsidering facts or evidence, or by making independent credibility determinations." *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

At the same time, the Court's review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). If the Commissioner's decision "lacks evidentiary support or an adequate discussion of the issues," then the Court must remand the matter. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Moreover, a reviewing court must "conduct a critical review of the evidence before affirming the Commissioner's decision." *Id.* (internal quotations omitted). "Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion." *Edmonson v. Colvin*, No. 14 CV 50135, 2016 WL 946973, at *2 (N.D. Ill. Mar. 14, 2016). The reviewing court cannot build the requisite logical bridge between the evidence and the ALJ's conclusions on behalf of the ALJ or the Commissioner. *Id.*

### III. DISCUSSION

Plaintiff argues that remand is required because the ALJ improperly "played doctor" in evaluating her physical examinations and significantly erred in evaluating her complaints of pain. Because the Court disagrees, it affirms the ALJ's decision.

**A. The ALJ Properly Evaluated Plaintiff's Physical Examinations**

Although Plaintiff's first argument on appeal seeks to invoke the principle that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings," *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996), the Court believes Plaintiff misconstrues the prohibition against "playing doctor." An ALJ plays doctor by ignoring

3

relevant medical evidence and using his judgment to make his own medical findings; in contrast, he does *not* play doctor when he discusses and weighs the medical evidence and makes appropriate inferences from that evidence. *See Olsen v. Colvin,* 551 F. App'x 868, 874 (7th Cir. 2014); *Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010); *Brown v. Barnhart*, 298 F. Supp. 2d 773, 791 (E.D. Wis. 2004). Here, Plaintiff contends that the ALJ "inappropriately played medical doctor" by finding her capable of light work based on objective examination findings, such as her observed non-antalgic gait[2] on examination. Dkt. #11 at 6. But the ALJ did what he was required to do. He assessed Plaintiff's capacity to work based on the medical findings and observations by Plaintiff's physicians. *See Featherstone v. Colvin*, No. 13 CV 6559, 2016 WL 147655, at *6 (N.D. Ill. Jan. 13, 2016) ("[T]he determination of the RFC is an issue reserved for the Commissioner, and in determining that RFC, the ALJ is required to consider all of the relevant medical and nonmedical evidence[.]"). The ALJ did not play doctor by discussing and weighing objective examination findings, such as the observations of Plaintiff's physicians regarding her gait, to craft an RFC. *See also id.* ("[A]n ALJ is only impermissibly 'playing doctor' when she builds an RFC based on unsupported assumptions instead of relevant evidence.").

Likewise, Plaintiff misconstrues the concept of an "independent medical finding." She accuses the ALJ of making "multiple medical conclusions of his own" by (1) finding that the strength in Plaintiff's left ankle dorsiflexors and her mildly diminished sensation in her lower extremities detracted from her complaints; and (2) noting that Plaintiff exhibited no gross motor or sensory deficits in her lower extremities on evaluation in October 2015 and used a cane at

---

[2] An "antalgic" gait is "a limp adopted so as to avoid pain on weight-bearing structures (as in hip injuries), characterized by a very short stance phase." Definition of "antalgic gait," *Dorland's Medical Dictionary*, http://www.dorlands.com (last visited Jan. 22, 2019). Thus, "non-antalgic" indicates normal gait.

4

some visits but not others. Dkt. #19 at 2 (citing R. 23, 25, 26, 27). None of these are improper, independent medical conclusions. The ALJ was free to find that Plaintiff's left ankle dorsiflexor strength and lower extremity sensation (as observed by her doctors) undermined her subjective complaints. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) ("[A] discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration."); *King v. Colvin*, No. 11 C 2842, 2013 WL 3944182, at *11 (N.D. Ill. July 31, 2013) ("ALJs are, of course, free to rely on discrepancies between the objective evidence and self-reports to find that a claimant is exaggerating her symptoms."). And by reciting a doctor's medical finding or observation, such as a lack of gross motor or sensory deficits or varied use of a cane upon examination, the ALJ did not *make his own* medical conclusions. To say this would be to say that the ALJ improperly makes his "own" medical conclusion every time he mentions a medical finding from the record. This would make it impossible for the ALJ to fulfill his duty to discuss and weigh the medical evidence. Here, the ALJ simply relied on medical opinions and evidence in the weighing process. That's what ALJs are supposed to do.

Plaintiff also contends that the ALJ erred by (1) placing more emphasis on examinations where Plaintiff exhibited normal gait; (2) downplaying other, "abnormal" examination findings regarding Plaintiff's lower extremity strength and sensation; and (3) failing to explain how the worsening of Plaintiff's examinations over time affected his evaluation. Dkt. #11 at 4-6. The first two arguments merely reflect dissatisfaction with how the ALJ weighed certain examination findings. Such dissatisfaction, however, does not warrant remand. It was the ALJ's job to weigh conflicting evidence, *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015), and this Court cannot reweigh the evidence on appeal and substitute its judgment for that of the ALJ. *White v.*

*Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005); *see Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (relying on this principle to reject a similar complaint about the respective weights the ALJ gave to conflicting medical evidence).

Nor has Plaintiff shown any error in the ALJ's treatment of this evidence. Nothing suggests that the ALJ used Plaintiff's gait on examination as "the determinative objective factor in terms of whether she could complete light work," as Plaintiff contends. Dkt. #11 at 4-5. Although Plaintiff's gait on examination may have been one factor in limiting Plaintiff to light work with additional postural restrictions, the ALJ explained that this decision was informed by a number of factors, such as medical evidence tending to show that Plaintiff's back symptoms responded well to, and were generally well controlled by, medications and other treatments; Plaintiff's reported low levels of pain; objective findings from three of Plaintiff's physicians; Plaintiff's testimony about her daily activities; and by the opinions of the state agency medical consultants, to which the ALJ gave great weight. R. 20, 33. Moreover, although Plaintiff disagrees with the language used by the ALJ to describe her purportedly "abnormal" examination findings, she has not shown that this language reflects a misreading of the evidence. Dkt. #11 at 5. In fact, the ALJ's statement that Plaintiff exhibited "mildly diminished sensation in her left lower extremity" tracks the finding of Plaintiff's own doctor; specifically, that Plaintiff "has mild diminished sensation in the lateral shin on the left." R. 25, 28, 656. The ALJ also reasonably described right quadricep strength rated as a 5- and left ankle dorsiflexor strength rated as a 4+ to 5- (both out of 5) as "only mildly diminished strength." R. 28, 659. Similarly, the Court does not see any issue with the ALJ's description of lower extremity strength measurements from 4 to 5 (out of 5) as "nearly normal full strength." R. 26, 449. Plaintiff's

preference to characterize these findings in a manner more favorable to her claim does not mean the ALJ's characterizations were flawed, thereby requiring remand.

Plaintiff's third argument—that the ALJ failed to explain how the worsening of Plaintiff's examinations over time affected his evaluation – also fails for numerous reasons, including that it is based on a faulty premise. Initially, the argument assumes that Plaintiff's physical examinations "worsened" between 2014 (when Plaintiff asserts that she had full sensation in her legs)[3] and 2016 (when she had antalgic gait and diminished sensation in her left leg). Dkt. #11 at 5-6. This assumption, though, is a leap. As just noted, the diminished sensation referred to by Plaintiff was described by her own doctor as mild. R. 656. And although Plaintiff exhibited antalgic gait on some occasions in 2016, she also exhibited *non-antalgic* gait and the ability to ambulate without a cane in 2016. R. 591, 593. She was also observed to exhibit normal or non-antalgic gait on several other occasions: in June 2014, September 2014, October 2014, March 2015, April 2015, September 2015, November 2015, and December 2015. R. 243, 249, 251, 262-63, 471-72, 479, 532, 537, 659. These observations, which the ALJ referred to in his decision, see R. 24-31, indicate that Plaintiff's gait upon examination did not steadily and consistently worsen between 2014 and 2016, as Plaintiff suggests. What's more, the ALJ indicated how he evaluated the evidence regarding Plaintiff's gait by noting that her complaints of lower back pain and knee pain were inconsistent with the evidence that "almost universally" described her gait "as normal or non-antalgic since June 2012." R. 31; *see Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration."); *King*, 2013 WL 3944182, at *11. And Plaintiff has not challenged this finding.

---

[3] The portion of the ALJ's decision cited by Plaintiff (R. 22) does not support this assertion.

For the first time in her reply, Plaintiff asserts that the ALJ's finding that Plaintiff could perform light work is not supported by the medical evidence. Dkt. #19 at 1 (asserting that there is no indication in the medical records that would support the ALJ's finding that Plaintiff "could be on her feet six out of eight hours of the day"); *id.* at 2 (asserting that the ALJ did not base his conclusion that Plaintiff could perform light work on medical expert testimony); *id.* (asserting that the ALJ's "decision that [Plaintiff] could do light work is basically based on his idea that her symptoms were somehow tolerable enough to complete work"). As this argument should have been raised in Plaintiff's opening brief, it is forfeited. *Rogers v. Barnhart*, 446 F. Supp. 2d 828, 851 (N.D. Ill. 2006) (holding that an argument that "could easily have been raised in the opening brief" was forfeited).

In any event, Plaintiff's assertion is wrong. Both non-examining state agency medical consultants opined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; and stand, walk, and/or sit each for about 6 hours in an 8-hour workday. R. 73-75, 85-87. These restrictions are consistent with light work. *See* SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983) (explaining that light work requires the ability to lift 20 pounds, frequently lift or carry 10 pounds, and stand or walk, off and on, for approximately 6 hours of an 8-hour workday). The ALJ gave great weight to these consultants' opinions, R. 31-32, and specifically noted that they supported his RFC assessment. R. 33. Thus, these opinions constitute substantial evidence supporting the ALJ's light work finding, especially because Plaintiff does not challenge the ALJ's reliance on these opinions or identify any competing medical opinions. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (finding that the ALJ was entitled to rely upon the opinions of non-examining state agency doctors to determine the claimant's RFC); *Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *7 (N.D. Ill. Oct. 29,

2014) (explaining that "[t]he medical opinion of a state agency reviewing physician . . . can constitute substantial evidence to support an ALJ's opinion, especially where there is no other medical opinion to contradict it").

In the end, although Plaintiff disagrees with how the ALJ weighed the various pieces of evidence from the medical record, she has not shown that the ALJ's ultimate determination was unsupported by substantial evidence or tainted by legal error. *See Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). And without such a showing, this Court will not second-guess the ALJ's weighing of the evidence. *Sanders*, 600 F. App'x at 470 (rejecting a similar challenge to how the ALJ weighed the evidence because the decision was "supported by substantial evidence and free from procedural error"). This is particularly true here, as Plaintiff has failed to point to any medical opinion that would support a more restrictive RFC than that assessed by the ALJ based on his weighing of the evidence. *See Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error [in formulating an RFC] when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'") (quoting *Rice*, 384 F.3d at 370). Accordingly, the Court finds that the ALJ did not err in evaluating Plaintiff's physical examinations.

### B. The ALJ's Evaluation of Plaintiff's Pain Was Not Erroneous

Plaintiff also contends that the ALJ significantly erred in evaluating her pain. An ALJ's evaluation of a claimant's subjective symptoms, including pain, is afforded "special deference" and will be overturned "only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *see* SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016) (noting that pain is a symptom to be considered in determining whether an individual is

disabled). This means that a court will uphold an ALJ's subjective symptom evaluation unless it "lacks any explanation or support." *Elder*, 529 F.3d at 413-14.

Here, as in nearly every decision this Court reviews, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and the other evidence in the record." R. 21. But, importantly, the ALJ supported this finding with at least the following reasons. First, the ALJ noted that Plaintiff stopped working for reasons unrelated to her impairments—Plaintiff testified that she quit her job because she had been reassigned to the overnight shift, *see* R. 47-48—which raised "a serious question as to whether [Plaintiff's] unemployment since that time [was] truly the result of her medical impairments." R. 22. Second, the ALJ found that the objective evidence, including the medical evidence concerning Plaintiff's back and knee impairments, provided only limited support for Plaintiff's allegations and tended to suggest that her impairments were not as severe, persistent, or limiting as alleged. *E.g.*, R. 22, 28, 29, 31. Third, the ALJ concluded that evidence concerning Plaintiff's daily activities also tended to suggest that her symptoms were not as severe, persistent, or limiting as alleged. R. 31.

Although Plaintiff challenges the ALJ's reliance on her daily activities to evaluate her pain (as discussed below), she does not challenge the ALJ's reliance on the other two justifications. This failure alone supports upholding the ALJ's pain evaluation. *See Vanover v. Colvin*, 627 F. App'x 562, 566-67 (7th Cir. 2015) (despite the ALJ's erroneous treatment of daily activities, upholding the ALJ's subjective symptom assessment because it was based on several factors that were not challenged by the claimant); *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (explaining that not all of an ALJ's reasons for a subjective symptom assessment "must be valid as long as *enough* of them are") (emphasis in original); *see also Elder*, 529 F.3d

at 414 (upholding a subjective symptom assessment that was supported by a single valid reason). In addition, because Plaintiff has failed to even acknowledge the applicable "patently wrong" standard in her briefing, the Court is hard pressed to find that she has shown that this highly deferential standard has been met, as was her burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018).

Nonetheless, the Court addresses Plaintiff's contentions. First, Plaintiff contends that the ALJ's evaluation of her pain failed to confront two facts that suggested disability: (1) that Plaintiff's pain worsened with activity; and (2) that Plaintiff's doctors recommended that she use a spinal cord stimulator. In evaluating Plaintiff's pain, though, the ALJ was not required to discuss every piece of evidence in the record, so long as he minimally articulated the reasons underlying his evaluation. *See Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999); *Sawyer v. Colvin*, 512 F. App'x 603, 608 (7th Cir. 2013); *Bailey v. Barnhart*, 473 F. Supp. 2d 822, 836 (N.D. Ill. 2006); *Petrie v. Colvin*, No. 12 C 4682, 2014 WL 7254448, at *3 (N.D. Ill. Dec. 18, 2014). The ALJ did just that, identifying Plaintiff's decision to stop working for reasons unrelated to her impairments, a lack of supporting objective evidence, and Plaintiff's daily activities.

Moreover, the purportedly ignored facts do not render the ALJ's pain evaluation erroneous. To start, the Court does not consider Plaintiff's assertion that her pain worsened with activity (Dkt. #11 at 7), as it is unaccompanied by any evidentiary citation. *See Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014) (noting "that unsupported statements of counsel . . . are not evidence and do not count"); *cf. Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702-03 (7th Cir. 2010) (striking factual assertions "that lack direct citation to easily identifiable support in the record"). Nor does Plaintiff explain why the

ALJ's purported failure to address this alleged fact warrants remand. *See Gross*, 619 F.3d at 704 (explaining that it is not the court's "responsibility to research and construct the parties' arguments") (internal quotations omitted); *Argyropoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008) (finding a perfunctory and undeveloped argument forfeited). As for Plaintiff's assertion that her doctors recommended a spinal cord stimulator, the November 2015 and June 2016 records cited by Plaintiff show that her doctor suggested that a spinal cord stimulator would be an option *if* her pain increased:

- "I discussed with Ms. B[.] that the remaining option that I have to offer her *if her pain were to worsen would be spinal cord stimulation. . . .* Spinal cord stimulation may be able to appropriately manage her pain and limit or eliminate opioids."

- "Again, *if Ms. B[.]'s pain were to escalate in the future, the next step would be a trial of spinal cord stimulation*. I have discussed with Ms. B[.] that if her pain were to increase, her options would be spinal cord stimulation or surgical intervention with Dr. Sliva as opposed to escalating opioid doses."

R. 480, 592 (emphases added). But Plaintiff does not cite anything from the record indicating that her pain, in fact, *did* increase to the point that her doctor recommended a spinal cord stimulator. Plaintiff also does not identify any record evidence (such as a statement by one of her doctors), case law, or medical authority to support her assertion that the possibility of treatment by spinal cord stimulation indicates unstable or uncontrolled pain. Dkt. #19 at 4. And her assertion that a spinal cord stimulator is "inconsistent with being able to perform light work" is likewise perfunctory and unsupported by any evidence or authority. *Id.* at 3. Plaintiff's conclusory attorney arguments on these points do not show reversible error. *See R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 666 n.29 (N.D. Ill. 2017) ("[S]tatements of lawyers are not evidence and do not count. Nothing is simpler than to make an unsubstantiated allegation.") (internal citations omitted).

Second, Plaintiff complains that the ALJ improperly relied upon her testimony about her daily activities. An ALJ may consider a claimant's "description of [her] daily activities in assessing whether [her] testimony about the effects of [her] impairments was credible or exaggerated." *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). The ALJ did not impermissibly rely on Plaintiff's daily activities to determine that Plaintiff could engage in full-time employment. *See Hughes v. Colvin*, 664 Fed. Appx. 587, 592 (7th Cir. 2016). Here, the ALJ noted Plaintiff's testimony that she could independently shower, groom, and dress herself; that she continues to cook, clean, do laundry, and go grocery shopping; and that she reads, spends time on the computer, spends a lot of time playing with her five-month-old granddaughter, runs errands, and takes her mother-in-law to all her medical appointments. R. 31. While acknowledging Plaintiff's alleged difficulties with performing some of these tasks, the ALJ found these alleged difficulties not entirely persuasive in light of the medical evidence. *Id.*

Plaintiff first faults the ALJ for not "confronting" her allegedly inconsistent activities at the hearing by, for example, asking Plaintiff how long it took her to perform her errands or how many doctors' appointments her mother-in-law had. Dkt. #11 at 8; Dkt. #19 at 4. As an initial matter, the Court notes that Plaintiff was represented by counsel at the hearing, see R. 42, and her counsel could have helped confront these issues through her own questioning of Plaintiff. *Cf. Summers*, 864 F.3d at 527 (rejecting the claimant's argument "that the ALJ failed to adequately develop the record by neglecting to inquire further into her testimony that she had 'bad days'" where, among other things, the claimant was "represented by counsel at the hearing" and, as such, was "presumed to have made her best case before the ALJ"). Moreover, Plaintiff has not shown that the ALJ was obligated to make these inquiries. In fact, a similar argument was recently rejected in *McHenry v. Berryhill*, where the claimant argued that the ALJ erred by

invoking her physical activities to discredit her symptom allegations without first "probing the extent of [her physical activity] with questions at the hearing." 911 F.3d 866, 873 (7th Cir. 2018). As the Seventh Circuit explained, an ALJ only has a burden of inquiry "when drawing inferences about the severity of a condition from the failure to seek or continue medical care," and the claimant had "neither failed to seek nor failed to continue medical care." *Id.* at 873-74. The negative inferences drawn by the ALJ here likewise do not stem from Plaintiff's failure to seek or continue medical care, but from the perceived inconsistencies between Plaintiff's daily activities and her alleged symptoms. Thus, the ALJ had no obligation to further probe the extent of these activities at the hearing, especially because Plaintiff's counsel had the same opportunity to do so.

The only case cited by Plaintiff for this argument—this Court's decision in *Musgrove v. Berryhill*, No. 17 CV 50117, 2018 WL 1184734 (N.D. Ill. Mar. 7, 2018)—is inapposite. Dkt. #19 at 4. In *Musgrove*, the ALJ speculated that the claimant's condition might have significantly improved after his knee surgery based on the absence of post-surgery medical records. 2018 WL 1184734, at *7. Based on this speculation, the ALJ discounted a treating physician's opinions that predated the surgery. *Id.* In light of the evidence showing that the surgery was only intended to provide a temporary fix and minor improvement, as well as the evidence provided by the claimant to show that he was disabled even after the surgery, this Court found that the ALJ should have provided the claimant with an opportunity to supplement the record, as the claimant could not have been "required to anticipate that the ALJ would speculate that [his] condition had improved to such a great extent after his knee surgery that the ALJ would find all evidence from his treating physician predating the knee surgery to be irrelevant." *Id.* at *7-8. This scenario, though, bears no resemblance to the issue here: whether the ALJ had to affirmatively ask

additional questions about Plaintiff's daily activities before relying upon her testimony about them to discount her alleged pain and limitations. As *McHenry* shows, the ALJ was not so obligated. 911 F.3d at 873.

The remainder of Plaintiff's daily activity arguments fare no better. For one thing, Plaintiff's contention that the ALJ emphasized her "ability to perform unspecified errands over the difficulties [Plaintiff] reported in taking care of her own household" (Dkt. #11 at 8) ignores the ALJ's listing of several activities *other* than "running errands" that he believed to undermine Plaintiff's allegations, such as independently showering, grooming, and dressing; cooking, cleaning, doing laundry, and grocery shopping; and spending time on the computer and with her granddaughter. R. 31. And the ALJ explained why these activities took precedence over Plaintiff's alleged difficulties in taking care of her own household: he did not find these alleged difficulties "entirely persuasive in light of the medical evidence summarized above." *Id.* Plaintiff also provides no argument as to why it matters whether the ALJ explained how her daily activities are inconsistent with being limited to sedentary work; therefore, the Court does not find that this alleged error warrants remand either. *See Gross*, 619 F.3d at 704; *Argyropoulos*, 539 F.3d at 738.[4]

Lastly, Plaintiff's reply brief contains several assertions that appear to be related to the ALJ's evaluation of her pain and subjective allegations; namely, that her pain fluctuated and

---

[4] The Court further notes that even if Plaintiff had shown that the ALJ's analysis of her daily activities was flawed, the ALJ's pain evaluation is still supported by the other unchallenged justifications. *See, e.g.*, *Richards v. Berryhill*, 743 F. App'x 26, 29-30 (7th Cir. 2018) (upholding a subjective symptom evaluation despite the ALJ's "shaky" consideration of the claimant's daily activities because the evaluation was otherwise supported by "specific reasons supported by the record"); *Vanover*, 627 F. App'x at 566-67 (upholding a subjective symptom evaluation despite the ALJ's failure to "provide a valid explanation for discrediting [the claimant] based on the extent of her daily activities" where the other reasons supporting the evaluation were not challenged by the claimant); *Kittelson v. Astrue*, 362 F. App'x 553, 557-58 (7th Cir. 2010) (upholding a subjective symptom evaluation despite the ALJ's erroneous analysis of the claimant's daily activities because the evaluation rested on an additional, valid reason).

"was almost never a zero," that she sought treatment to keep her pain at a baseline level and that any tolerable symptoms were a result of significant medical intervention, and that her self-reported limitations are inconsistent with the ability to complete light work. Dkt. #19 at 1-3. Plaintiff should have made these assertions in her opening brief, when she first challenged the ALJ's evaluation of her subjective allegations (specifically, her pain). *See Rogers*, 446 F. Supp. 2d at 851. Moreover, Plaintiff's assertions are unaccompanied by any explanation as to why the ALJ's evaluation of this purported evidence in coming to his RFC determination was "patently wrong." Thus, they are forfeited for that reason as well. *See Argyropoulos*, 539 F.3d at 738.

The claimant bears the burden of showing that an ALJ's pain evaluation was "patently wrong." *See Horr*, 743 F. App'x at 19-20; *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (explaining that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). Plaintiff has not met this burden, particularly because she has not directed the Court to any treating or examining source medical opinion stating that her "symptoms were more severe than the ALJ acknowledged." *See Dowlen v. Colvin*, 658 F. App'x 807, 812 (7th Cir. 2016). Thus, the Court upholds the ALJ's evaluation of Plaintiff's pain.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Government's motion for summary judgment is granted, and the ALJ's decision is affirmed.

Entered: January 29, 2019         By: _____
                                      Iain D. Johnston
                                      U.S. Magistrate Judge

16